## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PON GROUP, LLC, | ) | Case No. 18-22505 |
| | ) | |
| Debtor. | ) | Honorable A. Benjamin Goldgar |
| | ) | |
| | ) | Courtroom 642 |

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

Paul M. Bauch (ARDC #6196619)
Carolina Y. Sales (ARDC #6287277)
BAUCH & MICHAELS, LLC D/B/A LAKELAW
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel.: (312) 588-5000
Fax: (312) 427-5709
pbauch@lakelaw.com
Attorneys for Debtor-in-Possession

Dated: September 9, 2019

{35482: 010: 02672882.DOC :2 }

# TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND INTERPRETATION ........................................... 5

    A.    Definitions ....................................................................... 5

    B.    Interpretation; Application of Definitions and Rules of Construction    12

ARTICLE II - PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES
AND PRIORITY TAX CLAIMS .................................................................... 12

    2.1    *Administrative Expenses* ........................................... 12

    2.2    *Professional Compensation and Reimbursement Claims*............................................................................... 13

    2.3    *Priority Tax Claims* ............................................. 13

ARTICLE III - CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS,
IMPAIRMENT AND VOTING.................................................................... 14

ARTICLE IV - PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
INTERESTS .................................................................................... 14

    4.1    *Priority Non-Tax Claims (Class 1)* ...................................... 14

    4.2    *Real Estate Tax Secured Claims-Hancock (Class 2)* ................. 15

    4.3    *Real Estate Tax Secured Claims-Itasca (Class 3)* ............... 15

    4.4    *Nexgen Secured Claim (Class 4)* ............................... 15

    4.5    *Leaf Secured Claim (Class 5)* ................................ 15

    4.6    *American Metro Bank-Hancock Secured Claim (Class 6)* .................. 16

    4.7    *American Metro Bank-Itasca Secured Claim (Class 7)* ...................... 16

    4.8    *American Metro Bank-LOC Secured Claim (Class 8)* ......................... 16

    4.9    *General Unsecured Claims (Class 9)*...................................

    4.10    *Associated Bank Secured Claim (Class 10)*

    4.11    *Associated Bank Subordinated Unsecured Claim (Class 11)*

    4.12    *Membership Equity Interests (Class 10)*................................... 17

    4.13    *Confirmation* ................................................. 17

ARTICLE V - MEANS OF IMPLEMENTATION ........................................... 17

    5.1    *Operation of Rental Units, Property Management and Consulting Business* ..................................................................... 17

    5.2    *Sale of Hancock Property and Itasca Property* ..................... 17

    5.3    *Legal Forms and Governance* ................................ 17

    5.4    *Exemption from Transfer Taxes* ............................... 18

    5.5    *Expedited Tax Determination* ................................ 18

ARTICLE VI - PROVISIONS GOVERNING DISTRIBUTIONS .............................. 19

TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| 6.1 | *Date of Distributions* | 19 |
| 6.2 | *Distributions Concerning Disputed Secured Claims* | 19 |
| 6.3 | *Distributions Concerning Disputed General Unsecured Claims* | 19 |
| 6.4 | *Disbursing Agent* | 20 |
| 6.5 | *Rights and Powers of Disbursing Agent* | 20 |
| 6.6 | *Delivery of Distributions* | 21 |
| 6.7 | *Manner of Payment* | 21 |
| 6.8 | *Setoffs and Recoupment* | 21 |
| 6.9 | *Allocation of Plan Distributions Between Principal and Interest* | 21 |
| 6.10 | *Withholding and Reporting Requirements* | 22 |

ARTICLE VII - PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER PLAN OF REORGANIZATION .......... 22

| | | |
|---|---|---|
| 7.1 | *Objections* | 22 |
| 7.2 | *No Distributions Pending Allowance* | 22 |
| 7.3 | *Distributions After Allowance* | 23 |

ARTICLE VIII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......... 23

| | | |
|---|---|---|
| 8.1 | *Treatment* | 23 |
| 8.2 | *Lease Agreements* | 23 |
| 8.3 | *Cure Payments* | 23 |
| 8.4 | *Rejection Damages Claims* | 24 |

ARTICLE IX - CONDITIONS PRECEDENT TO CONSUMMATION DATE .......... 24

| | | |
|---|---|---|
| 9.1 | *Conditions Precedent to Confirmation* | 24 |
| 9.2 | *Conditions Precedent to Effectiveness* | 24 |
| 9.3 | *Waiver of Conditions* | 25 |
| 9.4 | *Satisfaction or Failure of Conditions* | 25 |

ARTICLE X - EFFECT OF CONFIRMATION .......... 25

| | | |
|---|---|---|
| 10.1 | *Revesting of Assets* | 25 |
| 10.2 | *Binding Effect* | 25 |
| 10.3 | *Discharge of Debtor* | 25 |
| 10.4 | *Term of Injunctions or Stays* | 26 |

TABLE OF CONTENT
(continued)

*10.5*    *Indemnification Obligations* ................................................................... 26

*10.6*    *Exculpation* ................................................................................... 27

*10.7*    *Releases* ...................................................................................... 27

*10.8*    *Retained Causes of Action* .................................................................. 28

ARTICLE XI - RETENTION OF JURISDICTION ................................................ 28

ARTICLE XII - MISCELLANEOUS PROVISIONS ............................................... 30

*12.1*    *Payment of Statutory Fees* .................................................................. 30

*12.2*    *Modification of Plan* .......................................................................... 30

*12.3*    *Withdrawal of Plan* ........................................................................... 30

*12.4*    *Severability of Plan Provisions* ............................................................ 30

*12.5*    *Governing Law* ............................................................................... 30

*12.6*    *Compliance with Tax Requirements* ..................................................... 31

*12.7*    *Computation of Time* ........................................................................ 31

*12.8*    *Notices* ........................................................................................ 31

*12.9*    *Filing or Execution of Additional Documents* ...................................... 31

# PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Pon Group, LLC (the "Pon Group" or the "Debtor"), as the debtor and debtor in possession, hereby proposes the following chapter 11 plan of reorganization, pursuant to section 1121(a) of the Bankruptcy Code:

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

A.    Definitions.

The following terms used herein shall have the respective meanings defined below:

1.1.    ***Administrative Expense*** means any right to payment constituting a cost or expense of administration of the Case that is Allowed under sections 503(b), 507(a)(l), and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's Estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor during the Case, (d) any compensation for professional services rendered and reimbursement of expenses incurred, to the extent Allowed by Interim or Final Order under section 330 or 503 of the Bankruptcy Code, (e) all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code, and (f) cure payments for executory contracts and unexpired leases that are assumed under section 365 of the Bankruptcy Code.

1.2.    ***Affiliate*** (i) with respect to the Debtor, has the meaning set forth in section 101(2) of the Bankruptcy Code, and (ii) with respect to any Person (including, without limitation, the Debtor) means another Person who controls, is controlled by, or is under common control with, such Person.

1.3.    ***Allowed*** means (i) with reference to any Claim, (a) any Claim against the Debtor, which has been listed by the Debtor in its Schedules (as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1007) as liquidated in amount and not disputed or contingent as to liability and for which no proof of Claim has been filed, (b) any Claim as to which the liability of the Debtor and the amount thereof are determined by a Final Order, or (c) any Claim against the Debtor allowed pursuant to this Plan, and (ii) with reference to any Claim or Administrative Expense, (a) any Claim or Administrative Expense that is the subject of a timely filed proof of

Claim or request for payment of an Administrative Expense as to which no objection to allowance or request for estimation has been interposed on or before the applicable period of limitation fixed by Section 7.1 of this Plan or otherwise ordered by the Bankruptcy Court, or as to which any objection or request for estimation has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder, (b) any Claim or Administrative Expense expressly allowed under this Plan, or (c) any Claim or Administrative Expense allowed under section 502, 503, or 1111 of the Bankruptcy Code. Unless otherwise specified in this Plan or ordered by the Bankruptcy Court, "Allowed Claim" or "Allowed Administrative Expense" shall not include interest on such Claim or Administrative Expense from and after the Petition Date.

1.4.   ***Assumed Company Indemnities*** shall have the meaning set forth in Section 10.5 hereof.

1.5.   ***Assumed Lease Agreements*** mean all lease agreements that are not rejected in accordance with 11 U.S.C. § 365.

1.6.   ***Bankruptcy Code*** means title 11, United States Code, as amended from time to time, as applicable to the Case.

1.7.   ***Bankruptcy Court*** means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

1.8.   ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075, title 28, United States Code, as amended from time to time, as applicable to the Case, and any Local Rules of the Bankruptcy Court.

1.9.   ***Business Day*** means any day other than a Saturday, a Sunday, or any other day which is a court or legal holiday observed in the United States of America or the State of Illinois.

1.10.   ***Case*** means this case commenced by the Debtor in the Bankruptcy Court on the Petition Date under chapter 11 of the Bankruptcy Code.

1.11.   ***Cash*** means "dollars" and cash equivalents of the United States of America.

1.12.   ***Charging Order*** means the order entered by the circuit court of the 18th Judicial Circuit of the State of Illinois on October 31, 2018, which impressed a permanent lien upon the membership interests of Alexander Pon and Ketty Pon in the Debtor. *Associated Bank v. Pon Group, LLC, et al.,* 2018 L 000114.

1.13.   ***Claim*** means a "claim" as defined in section 101(5) of the Bankruptcy Code.

1.14. ***Collateral*** means the property that secures a Holder's Allowed Secured Claim.

1.15. ***Company*** means the Debtor, an Illinois limited liability company, organized on December 14, 2006.

1.16. ***Company Indemnities*** means any obligation of the Debtor pursuant to the Debtor's or the Reorganized Debtor's Operating Agreement, contracts or under any statute or common law arising at any time before the Effective Date to indemnify any former, present and future partners, managers, agents, employees, members, and/or Representatives of (i) the Debtor, or (ii) any Person serving in such capacity at the Debtor's request.

1.17. ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Case docket.

1.18. ***Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.19. ***Confirmation Order*** means the order or orders of the Bankruptcy Court confirming this Plan.

1.20. ***Cure*** means the payment of Cash by the Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a default by the Debtor under an executory contract or unexpired lease of the Debtor and (ii) permit the Debtor to assume such executory contract or unexpired lease under section 365 of the Bankruptcy Code.

1.21. ***Disbursing Agent*** means Bauch & Michaels, LLC d/b/a Lakelaw in its capacity as a disbursing agent under Sections 6.4 and 6.5 hereof.

1.22. ***Disclosure Statement*** means that certain disclosure statement relating to this Plan, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, Rule 3017 of the Bankruptcy Rules.

1.23. ***Disclosure Statement Order*** means the order issued by the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

1.24. ***Disputed*** means a Claim, Equity Interest, or Administrative Expense (a) to the extent neither Allowed nor disallowed under this Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (b) which has been or hereafter is listed by

the Debtor on its Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement of the parties or a Final Order, or (c) as to which the Debtor or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order, or (d) which arises in connection with an executory contract which, as of the Confirmation Date, has not yet been assumed by the Debtor, and therefore such contract is deemed rejected pursuant to Section 8.1 of this Plan.

1.25.   ***Disputed General Unsecured Claim Reserve*** means the reserve established pursuant to Section 6.3 of this Plan for Disputed General Unsecured Claims.

1.26.   ***Disputed Secured Claim Reserve*** means the reserve established pursuant to Section 6.2 of this Plan for Disputed Secured Claims.

1.27.   ***Effective Date*** means a Business Day selected by the Debtor, and specified in a notice sent by the Debtor to all parties in interest, on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of this Plan specified in Section 9.2 of this Plan shall have been satisfied or waived as provided in Section 9.3.

1.28.   ***Equity Interest*** means the membership  interests, or other equity security or ownership interests in the Debtor, including all rights, interests, and Claims against the Debtor or its respective Affiliates or Representatives (including Claims for fraud, misrepresentation, rescission, reimbursement, contribution, or damages) arising under, or in connection with, or in any way related to (i) all agreements, including the Operating Agreement, entered into by the Debtor or its respective Affiliates or Representatives in connection with the issuance of such security or any related transactions or (ii) the purchase or sale of such security or any related transactions.

1.29.   ***Estate*** means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.30.   ***Estate Causes of Action*** means all claims and causes of action of the Debtor against third parties arising under Chapter 5 of the Bankruptcy Code, or under related federal or state statutes or common law, including fraudulent transfer laws, and including but not limited to claims against Nexgen arising under or related to the Secured Merchant Agreement, or its conduct with respect to the Debtor or the Estate.

1.31.   ***Existing Organizational Documents*** means the Debtor's articles of organization, or other charter documents legally forming and/or

organizing the Debtor, and the Operating Agreement, all as amended
and/or restated up to, and in existence as of, the time immediately
prior to the Effective Date. Except to the extent amended or restated
by the Plan, such Existing Organizational Documents will remain in
full force and effect.

1.32. ***Face Amount*** means either (i) the full stated amount claimed by the
Holder of such Claim in any proof of Claim filed by the bar date
established by the Bankruptcy Court or otherwise deemed timely filed
under applicable law, if the proof of Claim specifies only a liquidated
amount; or (ii) if no proof of Claim has been filed by the bar date or has
otherwise been deemed timely filed under applicable law or if the proof
of Claim specifies an unliquidated amount, the amount of the Claim (a)
acknowledged by the Debtor or Reorganized Debtor in any objection to
such Claim or in the Schedules as an undisputed, non-contingent and
liquidated Claim, (b) estimated by the Bankruptcy Court pursuant to
section 502(c) of the Bankruptcy Code, or (c) proposed by the Debtor or
established by the Reorganized Debtor following the Effective Date.

1.33. ***Final Order*** means an order or judgment of the Bankruptcy Court or
other court of competent jurisdiction, which has been entered on the
docket maintained by the clerk of such court, and which has not been
reversed, vacated, or stayed and as to which (a) the time to appeal,
petition for certiorari, or move for a new trial,  or rehearing has
expired and as to which no appeal, petition for certiorari, or other
proceedings for a new trial,  or rehearing shall then be pending or (b) if
an appeal, writ of certiorari, new trial,  or rehearing thereof has been
sought, such order or judgment shall have been affirmed by the highest
court to which such order was appealed, or certiorari shall have been
denied or a new trial,  or rehearing shall have been denied or resulted
in no modification of such order, and the time to take any further
appeal, petition for certiorari, or move for a new trial,  or rehearing
shall have expired; provided, however, that the possibility that a
motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or
under Rule 60 of the Federal Rules of Civil Procedure, or any
analogous rule under the Bankruptcy Rules, may be filed relating to
such order, shall not cause such order not to be a Final Order.

1.34. ***General Unsecured Claim*** means any Claim that arose or accrued
prior to the Petition Date that is not an Administrative Expense,
Priority Tax Claim, Priority Non-Tax Claim, or Secured Claim,
including, without limitation, Claims arising from the rejection of an
unexpired lease or executory contract pursuant to this Plan or other
Final Order of the Bankruptcy Court, and the Holders of Secured
Claims, that are determined not to be have Collateral of sufficient

value pursuant to Section 506(a), except to the extent such Claims are separately classified as Unsecured Claims under the Plan.

1.35.   ***General Unsecured Claim Distributions*** means Cash distributed to Holders of General Unsecured Claims under the Plan.

1.36.   ***Guarantees*** means those certain guarantees of the Debtor's obligations to American Metro Bank, Associated Bank, and Nexgen executed by Kitty Pon and Alex Pon.

1.37.   ***Hancock Property*** means that residential real property commonly known as 175 East Delaware, Unit 5401, Chicago, IL 60611.

1.38.   ***Holder*** means a Person that holds a beneficial interest in a Claim or Equity Interest against the Debtor.

1.39.   ***Indemnified Person*** means any member, manager, agent, Representative or employee of the Debtor or any of its Affiliates who was a manager, agent, Representative or employee of the Debtor or any of its Affiliates before, on or after the Petition Date, and any member, manager, agent, Representative or employee of the Reorganized Debtor or any of its Affiliates after the Effective Date.

1.40.   ***Itasca Property*** means that certain residential real property commonly known as 283 Bay Road, Itasca, IL 60143.

1.41.   ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.42.   ***Local Rules*** means Local Rules of the United States Bankruptcy Court for the Northern District of Illinois.

1.43.   ***Managers*** means Alexander Pon and Kitty Pon.

1.44.   ***Mortgage*** means the Mortgage dated March 15, 2017, executed by the Debtor in favor of Nexgen against the Property.

1.45.   ***Net Proceeds of Sale*** means the cash proceeds received by the Debtor from the closing of the sale of any real property after credits and prorations due the buyer and the payment of all direct closing costs, including closing attorneys' fees, title charges, and transfer taxes, if applicable, and any administrative expenses recoverable from the Property pursuant to Section 506(c).

1.46.   ***Net Rental Income*** means cash received from any tenant under a lease or occupancy agreement relating to the Hancock Property or Itasca Property, less direct expenses of the Property paid by the Debtor, including Association Assessments, Real Estate Taxes, maintenance and repairs, leasing commissions, attorney's fees, and any other expenses incurred by the Debtor in the operation of the Hancock Property or the Itasca Property as a rental.

1.47.  **Operating Agreement** means the operating agreement for the Company dated as of August 14, 2008 and executed by Alexander Pon and Ketty Pon as managers/members.

1.48.  **Person** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof, or any other form of legal entity.

1.49.  **Petition Date** means August 9, 2018, the date on which the Debtor commenced its Case.

1.50.  **Plan** means this Plan of Reorganization, including, without limitation, the Plan Addendum, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.51.  **Priority Non-Tax Claim** means any unsecured Claim entitled to priority in payment as specified in section 507(a)(3)-(7) or (a)(9)-(10) of the Bankruptcy Code.

1.52.  **Priority Tax Claim** means any unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.53.  **Property** means the Debtor's former office and warehouse facility located at 951 Thorndale, Bensenville, Illinois.

1.54.  **Ratable Proportion** means, with reference to any distribution on account of any Allowed Claim in any class or classes, as applicable, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims (plus Disputed Claims until disallowed) in the same class or classes, as applicable.

1.55.  **Releasee** means each of (a) the members of the Debtor as of the Effective Date of the Plan or at any time subsequent to the Effective Date of the Plan, and (b) each of their respective Representatives and Affiliates.

1.56.  **Reorganized Debtor** means the Debtor, on and after the Effective Date.

1.57.  **Representatives** means, with respect to any Person, such Person's present, former or future officers, directors, employees, consultants, members, managers, partners, principals, agents, advisors (including any attorneys, financial advisors, investment bankers, and other professionals retained by such Persons), Affiliates, funds under management, and representatives.

*1.58.* ***Sale Order*** means the order authorizing the sale of the Property entered by the Bankruptcy Court on January 3, 2019 [ECF No. 72].

*1.59.* ***Schedules*** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date pursuant to Bankruptcy Rule 1007.

*1.60.* ***Secured Claim*** means a Claim secured by a Lien on the Debtor's property, which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable nonbankruptcy law, but solely to the extent deemed secured by section 506(a) and (b) of the Bankruptcy Code, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code.

*1.61.* ***Tax Code*** means the Internal Revenue Code of 1986, as amended.

*1.62.* ***U.S. Trustee*** means the United States Trustee appointed under section 581, title 28, United States Code to serve in the Northern District of Illinois.

*1.63.* ***9019 Order American Metro Bank*** means the order entered by the Bankruptcy Court authorizing the Compromise and Allowance of the American Metro Bank Claims.

*1.64.* ***9019 Order Associated Bank*** means the order entered by the Bankruptcy Court authorizing the Compromise and Allowance of the Associated Bank Claims.

*1.65.* ***9019 Order Leaf Capital*** means the order entered by the Bankruptcy Court authorizing the Compromise and Allowance of the Leaf Financial Claims.

B.     Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan and not to any section, subsection, or clause contained in this Plan. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

# ARTICLE II

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

### 2.1    *Administrative Expenses.*

Except to the extent that a Holder of an Allowed Administrative Expense agrees to a less favorable treatment, and except as provided in this Section 2.1 of this Plan, as soon as reasonably practicable on or after the Effective Date, the Reorganized Debtor shall pay Cash in an amount equal to such Allowed Administrative Expense to each Holder of an Allowed Administrative Expense; *provided, however,* that Allowed Administrative Expenses representing liabilities incurred in the ordinary course of business by the Debtor, shall be assumed and paid by the Reorganized Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

### 2.2    *Professional Compensation and Reimbursement Claims.*

All Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file, on or before the deadline specified in any Local Rule or order of the Bankruptcy Court, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (A) upon the later of (l) the Effective Date and (2) the date on which the order that deemed such Administrative Expense Allowed becomes a Final Order or (B) upon such other terms as may be mutually agreed upon by such Holder and the Reorganized Debtor. The Reorganized Debtor is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course without Bankruptcy Court approval.

### 2.3    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, commencing as soon as reasonably practicable on or after the Effective Date, and continuing over a period not exceeding five (5) years after the Petition Date, Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with simple interest at the Applicable Rate, subject to the sole option of the Debtor or Reorganized Debtor to prepay the entire amount of the Allowed Priority Tax Claim at any time without penalty. All Allowed Priority Tax

Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND
## EQUITY INTERESTS, IMPAIRMENT AND VOTING

The categories of Claims and Equity Interests, other than Administrative Expenses and Priority Tax Claims, are classified for all purposes, including voting, confirmation, and distribution pursuant to this Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No |
| Class 2 | Real Estate Tax Secured Claims-Hancock | Unimpaired | No |
| Class 3 | Real Estate Tax Secured Claims-Itasca | Unimpaired | No |
| Class 4 | Nexgen Secured Claim | Unimpaired | No |
| Class 5 | Leaf Capital Secured Claim | Unimpaired | No |
| Class 6 | American Metro Bank-Hancock Secured Claim | Unimpaired | No |
| Class 7 | American Metro Bank-Itasca Secured Claims | Unimpaired | No |
| Class 8 | American Metro Bank-LOC Secured Claim | Unimpaired | No |
| Class 9 | General Unsecured Claims | Unimpaired | No |
| Class 10 | Associated Bank Secured Claim | Unimpaired | No |
| Class 11 | Associated Bank Unsecured Claim | Unimpaired | No |
| Class 12 | Membership Interests | Unimpaired | No |

## ARTICLE IV

## PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests shall receive the treatment set forth below.

### 4.1    *Priority Non-Tax Claims (Class 1).*

With respect to any Allowed Priority Non-Tax Claims not paid pursuant to a prior Final Order, as soon as reasonably practicable on or after the Effective Date or the date that is fourteen (14) days after the date such claim is Allowed, and except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each Allowed Priority Non-Tax Claim shall be paid in full in cash in accordance with the priorities set forth in section 507 of the Bankruptcy

Code, provided that to the extent such priority is based on Section 507(7) and the Holder of the Claim is also the Holder of a Purchaser Deposit Secured Claim, such priority claim shall be paid and deemed satisfied from the Holder's Escrow Deposit, and the balance of the non-priority portion of the claim shall be treated for all purposes as a Class 7 Claim. (All Allowed Priority Non-Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business.).

### 4.2    *Real Estate Tax Secured Claims-Hancock (Class 2).*

The Debtor shall pay the Holder of the Class 2 Claims 100% of the principal amount, together with interest at the statutory rate, with respect to the Hancock Property if owned by the Debtor when such Claims become due and payable, as follows: (1) to the extent of available Cash contained in any Real Estate Tax Escrow authorized under this Plan or agreement; (2) to the extent of any deficiency in the Real Estate Tax Escrow, then from the Net Sale Proceeds following the date when such Claims become due and payable, the balance due the Holder with respect to such Claim, then due and owing.

### 4.3    *Real Estate Tax Secured Claims-Itasca (Class 3).*

The Debtor shall pay the Holder of the Class 2 Claims 100% of the principal amount, together with interest at the statutory rate, with respect to the Itasca Property if owned by the Debtor when such Claims become due and payable, as follows: (1) to the extent of available Cash contained in any Real Estate Tax Escrow authorized under this Plan or agreement; (2) to the extent of any deficiency in the Real Estate Tax Escrow, then from the Net Sale Proceeds following the date when such Claims become due and payable, the balance due the Holder with respect to such Claim, then due and owing.

### 4.4    *Nexgen Secured Claim (Class 4).*

With respect to any portion of an Allowed Class 4 Secured Claim not paid pursuant to a prior Final Order, as soon as reasonably practicable on or after the Effective Date or the date that is fourteen (14) days after the date such claim is Allowed, such Allowed Class 4 Secured Claim shall be paid in full in cash from the Disputed Secured Claim Reserve established for the Class 4 Claim pursuant to the Sale Order.  To the extent that the Class 4 Claim is determined by the Bankruptcy Court not to be an Allowed Secured Claim, then to the extent allowed as a claim against the Estate, the Class 4 shall be treated for all purposes as Class 9 General Unsecured Claim, to the extent the Class 4 Claim is determined by the Bankruptcy Court not to be an Allowed Claim then no distribution shall be made on the claim.

### 4.5    Leaf Secured Claim (Class 5).

The Class 5 Claim has been paid in full pursuant to the 9019 Order Leaf Capital and shall not receive any further distribution under the Plan.

### 4.6    American Metro Bank-Hancock Secured Claim (Class 6).

With respect to any portion of an Allowed Class 6 Secured Claim not paid pursuant to a prior Final Order, as soon as reasonably practicable on or after the Effective Date or the date that is fourteen (14) days after the date such claim is Allowed, such Allowed Class 6 Secured Claim shall be paid in full in cash pursuant to the 9019 Order American Metro Bank.

### 4.7    American Metro Bank-Itasca Secured Claim (Class 7).

With respect to any portion of an Allowed Class 7 Secured Claim not paid pursuant to a prior Final Order, as soon as reasonably practicable on or after the Effective Date or the date that is fourteen (14) days after the date such claim is Allowed, such Allowed Class 7 Secured Claim shall be paid in full in cash pursuant to the  9019 Order American Metro Bank.

### 4.8    American Metro Bank-LOC Secured Claim (Class 8).

With respect to any portion of an Allowed Class 8 Secured Claim not paid pursuant to a prior Final Order, as soon as reasonably practicable on or after the Effective Date or the date that is fourteen (14) days after the date such claim is Allowed, such Allowed Class 8 Secured Claim shall be paid in full in cash pursuant to the 9019 Order American Metro Bank.

### 4.9    General Unsecured Claims (Class 9).

With respect to the portion of any Allowed Class 9 Unsecured Claim not paid pursuant to a prior Final Order, as soon as reasonably practicable on or after the Effective Date, such Allowed Class 9 Unsecured Claim shall be paid in full in cash from the Disputed Unsecured Claim Reserve established for the Class 9 Claims pursuant to this Plan. The Debtor shall pay Holders of Allowed Class 9 Claims 100% of the principal amount and accrued interest thereon.

### 4.10   Associated Bank Secured Claim (Class 10)

Subject to establishment of Disputed Secured Claim Reserves and Disputed Unsecured Claim Reserves, and in subordination to all allowed administrative expenses, allowed priority and allowed non-priority claims against the Debtor or the Reorganized Debtor, with respect to any portion of an Allowed Class 10 Secured Claim not paid pursuant to a prior Final Order, as soon as reasonably practicable

on or after the Effective Date, such Allowed Class 10 Secured Claim shall be paid $500,000 in cash pursuant to the 9019 Order Associated Bank.

Subject to establishment of Disputed Secured Claim Reserves and Disputed Unsecured Claim Reserves, and in subordination to all allowed administrative expenses, allowed priority and allowed non-priority claims against the Debtor or the Reorganized Debtor, with respect to any portion of an Allowed Class 10 Secured Claim not paid pursuant to a prior Final Order, as soon as reasonably practicable on or after the Sale of the Hancock Property and the Itasca Property, such Allowed Class 10 Claim shall be paid from the Net Proceeds of Sale up to $500,000 in cash, up to the aggregate of $1,000,000 inclusive of the other payments made under this section, pursuant to the 9019 Order Associated Bank.

### 4.11  *Associated Bank Unsecured Subordinated Claim (Class 11)*

Upon the payment in full of all allowed administrative expenses and allowed claims against the estate, and the establishment of sufficient reserves for reasonable ongoing administrative and other reasonable expenses of the reorganized Debtor, the Debtor shall pay the holder of the Allowed Class 11 Claim, up to the aggregate of $500,000 in cash, pursuant to the 9019 Order Associated Bank.

### 4.12  *Membership Equity Interests (Class 12).*

On the Effective Date, the holders of the Membership Interests shall retain their interests in the Debtor and the Charging Order shall be deemed discharged upon payment of each of the Class 10 and 11 Claim in full.

### 4.11  *Confirmation.*

Since all Classes of claims and interest are unimpaired and are deemed to have accepted the plan, the Debtor does not intend to solicit acceptances of the Plan. The Debtor will therefore seek confirmation of the Plan as provided in sections 1126(f) and 1129(8) of the Bankruptcy Code.

### ARTICLE V

### MEANS OF IMPLEMENTATION

### 5.1  *Operation of Rental Units, Property Management and Consulting Business.*

The Reorganized Debtor shall continue to operate the Hancock Property and the Itasca Property and will continue to manage the Net Proceeds of Sale of the Property. The Reorganized Debtor may otherwise engage in any business authorized by non-bankruptcy law, including leasing and managing real property

and consulting with respect to Chinese American business transactions. The Reorganized Debtor will seek to generate Net Rental Income and other business income to pay the operating expenses of the Debtor and to fund distributions to the holders of Claims and holders of Interests in the Reorganized Debtor.

### 5.2    *Sale of Hancock Property and Itasca Property.*

The Reorganized Debtor shall continue to market and will sell the Hancock Property and Itasca Property, for the purpose of generating Net Proceeds of Sale to pay operating expenses of the Debtor and to fund distributions to Holders of Claims, until such time as the Debtor has discharged the Charging Order.

### 5.3    *Legal Form and Governance.*

(a) Operating Agreement. The Debtor shall be deemed to have assumed the Operating Agreement effective as of the Effective Date. On the Effective Date, or as soon thereafter as practicable, the Debtor shall file any applicable reports as required, with the appropriate Persons in the applicable jurisdiction of organization to maintain the Debtor in good standing. Except to the extent amended or restated by this Plan, the Debtor's Existing Organizational Documents will remain in full force and effect after the Effective Date.

(b)    Managers of the Reorganized Debtor. On the Effective Date, the operation of the Reorganized Debtor shall continue to be the general responsibility of the Managers, subject to, and in accordance with, its Operating Agreement and Existing Organizational Documents. The initial Managers of the Reorganized Debtor are Alexander Pon and Ketty Pon.

(c)    Authorization. On the Effective Date, the Operating Agreement shall be authorized and approved in all respects, to be effective as of the Effective Date, case without further action under applicable law, regulation, order, or rule, including without limitation, any action by the members of the Debtor or the Reorganized Debtor. On the Effective Date, the ratification of the Operating Agreement and all other matters provided in this Plan involving the legal structure or governance of the Reorganized Debtor shall be deemed to have occurred, been authorized, and be in effect from and after the Effective Date, without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the members of the Debtor or the Reorganized Debtor.

### 5.4    *Exemption from Transfer Taxes*.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of equity securities under or in connection with this Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, and any deeds,

bills of sale, or assignments executed in connection with the sale pursuant to this Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 5.5    *Expedited Tax Determination.*

The Debtor and the Reorganized Debtor may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtor for any and all taxable periods (or portions thereof) ending before or after the Petition Date through, and including, the Effective Date.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

### 6.1    *Date of Distributions.*

Unless otherwise provided herein, any distributions to be made hereunder shall be made on the Effective Date, or as soon as practicable thereafter and deemed made on the Effective Date. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### 6.2    *Distribution Concerning Disputed Secured Claims.*

(a)    Disputed Secured Claim Reserve. From and after the Effective Date, all Cash to be distributed on account of any Disputed Secured Claims, when and if such Disputed Secured Claims become Allowed, (a) will be maintained by and in the name of the Disbursing Agent in the Disputed Secured Claim Reserve, and will be held in trust pending distribution by the Disbursing Agent for the benefit of the Holders of such Claims and, to the extent that all Disputed Secured Claims are not Allowed in full, such Cash shall be returned to the Reorganized Debtor for distribution in accordance with this Plan, (b) will be accounted for separately and (c) will not constitute property of the Reorganized Debtor except as provided in this Plan.

(b)    Reserved Amount. The amount of Cash to be deposited in the Disputed Secured Claim Reserve shall be calculated as if each Disputed Secured Claim were an Allowed Claim in its Face Amount, such that the reserved amount shall include the Cash that such Holder of such Disputed Secured Claim would have received if such Claim were Allowed at its Face Amount as provided for in the Sale Order, or any other agreement or order relating to the amount of a particular Disputed Secured Claim Reserve.

(c)      Recourse. Each Holder of a Disputed Secured Claim will have recourse only to the undistributed Cash held in the Disputed Secured Claim Reserve for satisfaction of the distributions to which Holders of Disputed Secured Claims are entitled under this Plan, and not to the Reorganized Debtor, its property or any assets previously distributed on account of any Allowed Claim.

### 6.3    *Distributions Concerning Disputed General Unsecured Claims.*

(a)      Disputed General Unsecured Claims Reserve. From and after the Effective Date, all Cash to be distributed on account of any Disputed General Unsecured Claims, when and if such Disputed General Unsecured Claims become Allowed, (a) will be maintained by and in the name of the Disbursing Agent in the Disputed General Unsecured Claim Reserve, and will be held in trust pending distribution by the Disbursing Agent for the benefit of the Holders of such Claims and, to the extent that all Disputed General Unsecured Claims are not Allowed in full, for the benefit of Holders of Allowed General Unsecured Claims in accordance with Section 7.3 of this Plan, (b) will be accounted for separately and (c) will not constitute property of the Reorganized Debtor except as provided in Section 7.3 of this Plan.

(b)      Reserved Amount. The amount of Cash to be deposited in the Disputed General Unsecured Claim Reserve shall be calculated as if each Disputed General Unsecured Claim were an Allowed Claim in its Face Amount multiplied by 150%.

(c)      Recourse. Each Holder of a Disputed General Unsecured Claim will have recourse only to the undistributed Cash held in the Disputed General Unsecured Claim Reserve for satisfaction of the distributions to which Holders of Disputed General Unsecured Claims are entitled under this Plan, and not to the Reorganized Debtor, its property or any assets previously distributed on account of any Allowed Claim.

### 6.4    *Disbursing Agent.*

All distributions under this Plan shall be made by the Disbursing Agent or such other entity designated by the Debtor as a Disbursing Agent on the Effective Date, which Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

### 6.5    *Rights and Powers of Disbursing Agent.*

(a)      Powers of the Disbursing Agent. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or

as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)  Expenses Incurred on or After the Effective Date. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.

### 6.6    Delivery of Distributions.

Record Address. Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, as applicable, unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim or interest by such Holder that contains an address for such Holder different from the address reflected for such Holder on the Schedules. In the event that any distribution to any Holder is returned as undeliverable, the Disbursing Agent shall use commercially reasonable efforts to determine the current address of such Holder, but no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of one year from the Effective Date or 6 months after such Claim is Allowed. After such date, all unclaimed property or interest in property shall revert to Reorganized Debtor, and the Claim of any other Holder to such property or interest in property shall be discharged and forever barred.

### 6.7    Manner of Payment.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements. All distributions of Cash to the creditors of the Debtor under this Plan shall be made by, or on behalf of, the Debtor.

### 6.8    Setoffs and Recoupment.

The Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the payments to be made pursuant to this Plan in respect of such Claim, any claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or Reorganized Debtor of any such claim it may have against such claimant.

### 6.9    *Allocation of Plan Distributions Between Principal and Interest.*

Except as otherwise provided herein, to the extent that any Allowed Claim entitled to a distribution under this Plan consists of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

### 6.10    *Withholding and Reporting Requirements.*

In connection with the Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Disbursing Agent for the payment and satisfaction of such withholding tax obligations. Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution pursuant to Section 6.5(a) of the Plan.

## ARTICLE VII

## PROCEDURES FOR TREATING DISPUTED
## CLAIMS UNDER PLAN OF REORGANIZATION

### 7.1    *Objections.*

Except as otherwise provided herein, as of the Effective Date, objections to, and requests for estimation of, Claims may be filed and prosecuted by the Debtor or Reorganized Debtor, or such other party in interest as may be appointed by the Bankruptcy Court. Such objections and requests for estimation shall be served on the respective claimant and filed with the Bankruptcy Court on or before the latest of (a) any deadline established by Order of the Bankruptcy Court, (b) the later of two -hundred seventy (270) days after the deadline for the filing of a proof of Claim with the Bankruptcy Court, (c) sixty (60) days after an application for allowance of an Administrative Expense has been filed with the Bankruptcy Court in the Case,

or (d) with respect to certain Claims identified prior to the Confirmation Date by the Debtor, such other date as may be fixed by the Bankruptcy Court.

### 7.2    *No Distributions Pending Allowance.*

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of the disputed portion of such Claim unless and until such Disputed Claim becomes Allowed. In lieu of distributions under this Plan to Holders of Disputed Secured Claims and Disputed General Unsecured Claims, the Disputed Claim Reserves will be established on the Effective Date to hold property for the benefit of these Claim Holders.

### 7.3    *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as practicable after the date of a Final Order allowing any Disputed Claim, the Disbursing Agent shall provide to the Holder of such Claim the distribution to which such Holder is entitled under this Plan. Any amounts that remain in any the Disputed General Unsecured Claim Reserve following resolution and payment of all Disputed General Unsecured Claims shall be distributed to the Reorganized Debtor.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1    *Treatment.*

Except as otherwise provided herein, including in Section 10.5 (Indemnification Obligations), in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement, or document entered into in connection with this Plan, as of the Effective Date the Debtor shall be deemed to have rejected each pre-petition executory contract and unexpired lease to which it is a party, unless such contract or lease (a) was previously assumed or rejected by the Debtor, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to assume filed on or before the Confirmation Date, or (d) is described in this Plan, as an executory contract or unexpired lease to be assumed. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

*8.2*    ***Lease Agreements.***

Except and to the extent previously assumed pursuant to an order of the Bankruptcy Court entered on or before the Confirmation Date, all unexpired residential Lease Agreements relating to the Hancock Property and the Itasca Property, deemed executory contracts assumable by the Debtor pursuant to section 365(a) of the Bankruptcy Code, shall be deemed assumed pursuant to the Confirmation Order and shall be enforceable by the Debtor according to their terms.

*8.3*    ***Cure Payments.***

Any monetary amounts by which any executory contract or unexpired lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

*8.4*    ***Rejection Damages Claims.***

Proofs of all Claims arising out of the rejection of executory contracts and unexpired leases pursuant to this Plan shall be filed with the Bankruptcy Court, claim, and served upon the Debtor and its counsel not later than thirty (30) days after the earlier of (a) the date on which notice of the occurrence of the Effective Date has been served and (b) the date of entry of an order of the Bankruptcy Court approving such rejection. Any Claims not filed within such time shall be forever barred from being asserted against the Debtor, its Estate, the Reorganized Debtor, and their respective properties and interests.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONSUMMATION DATE

*9.1*    ***Conditions Precedent to Confirmation.***

The Plan shall not be confirmed unless and until the following conditions have been satisfied or waived: (a) the Confirmation Order has been entered on the docket by the Clerk of the Bankruptcy Court; and (b) the form of the Plan, Plan Addendum, and the Confirmation Order have been approved by the Debtor.

### 9.2 *Conditions Precedent to Effectiveness.*

The Effective Date shall not occur, and this Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Article IX of this Plan:

(a)    The Confirmation Order becomes a Final Order.

(b)    All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of this Plan, including those actions identified in Article V of this Plan, are affected or executed and delivered, as applicable; and

(c) All authorizations, consents, and regulatory approvals, if any, required by the Debtor in connection with the consummation of this Plan are obtained and not revoked.

### 9.3 *Waiver of Conditions.*

Each of the conditions precedent in Section 9.2 hereof may be waived, in whole or in part by the Debtor.

### 9.4 *Satisfaction or Failure of Conditions.*

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Debtor determines that one of the conditions precedent set forth in Section 9.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall file a notice that the Plan has not become effective with the Bankruptcy Court and the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is vacated pursuant to this Section, this Plan shall be null and void in all respects, and nothing contained in this Plan shall constitute a waiver or release of any Claims against the Debtor or the allowance of any Claim as an Allowed Claim.

## ARTICLE X

## EFFECT OF CONFIRMATION

### 10.1 *Revesting of Assets.*

On the Effective Date, the Debtor, its properties and interests in property, and its operations shall vest in the Reorganized Debtor. From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and dispose of property, subject to the terms and conditions of this Plan. As

provided in Section 10.8 hereof, the Reorganized Debtor shall retain Estate Causes of Action, other than those released in Section 10.7 hereof.

### 10.2   Binding Effect.

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under this Plan, whether or not such Holder has accepted this Plan, and whether or not such Holder is entitled to a distribution under this Plan.

### 10.3   Discharge of Debtor.

To the extent provided for in Section 1141(d), except to the extent otherwise provided herein or in the Confirmation Order, the rights afforded in this Plan and the treatment of all Claims against or Equity Interests in the Debtor hereunder shall be in exchange for and in discharge of all debts of, Claims against, and Equity Interests in, the Debtor of any nature whatsoever, known or unknown, including, without limitation, any interest accrued or expenses incurred thereon from and after the Petition Date, or against its Estate, the Reorganized Debtor, or its properties or interests in property.

Except as otherwise provided herein or in the Confirmation Order, upon the Effective Date, all Claims against and Equity Interests in the Debtor shall be discharged in full exchange for the consideration, if any, provided hereunder. Except as otherwise provided herein or in the Confirmation Order, all Persons shall be precluded from asserting against the Debtor or the Reorganized Debtor or its properties or interests in property including the Property, any other Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

### 10.4   Term of Injunctions or Stays.

(a)     Except as otherwise expressly provided herein or in the Confirmation Order, all Persons who have held, hold or may hold Claims or Equity Interests will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Debtor or Reorganized Debtor, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or Reorganized Debtor, with respect to such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or Reorganized Debtor,, or against the property or interests in property of the Debtor or Reorganized Debtor,  with respect to such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to the Debtor or Reorganized

Debtor, or against the property or interests in property of the Debtor or Reorganized Debtor, with respect to such Claim or Equity Interest.

(b)    Unless otherwise provided in the Confirmation Order, all injunctions or stays arising under or entered during the Cases under section 105 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until and after the Effective Date.

### 10.5    *Indemnification Obligations.*

The Debtor's obligations under the Company Indemnities to indemnify any Indemnified Person with respect to Claims arising prior to the Effective Date will be deemed and treated as executory contracts that are assumed by the Reorganized Debtor pursuant to this Plan and sections 365 and 1123(b) of the Bankruptcy Code as of the Effective Date and the occurrence of the Effective Date shall be the only condition necessary to such assumption and all requirements for Cure and/or adequate assurance of future performance under section 365 for such assumption shall be deemed satisfied (the "Assumed Company Indemnities").

### 10.6    *Exculpation.*

As of the Confirmation Date, the Debtor and the Debtor's attorneys shall be deemed to have solicited acceptances of this Plan of Reorganization in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. The Debtor, the Reorganized Debtor, the Debtor's Attorney, and the Disbursing Agent, shall have no liability to any Holder of any Claim or Equity Interest or any other Person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Case, the Disclosure Statement, this Plan, the solicitation of votes for and the pursuit of confirmation of this Plan, the offer and issuance of any securities under this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for willful misconduct or gross negligence as determined by a Final Order and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

### 10.7    *Retained Causes of Action*

Effective as of the Effective Date, Estate Causes of Action, including all preference or other avoidance action claims and actions of the Debtor, including, but not limited to, those arising under chapter 5 of the Bankruptcy Code, and any causes of action under applicable non-bankruptcy law relating to Nexgen shall be retained by the Reorganized Debtor.

# ARTICLE XI

# RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters, except as expressly noted herein, arising out of, or related to, the Case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims including any Administrative Expenses resulting therefrom;

(b)     To determine any and all adversary proceedings, applications, and contested matters that are pending on the Effective Date;

(c)     To ensure that distributions to Holders of Allowed Administrative Expenses and Allowed Claims are accomplished as provided herein;

(d)     To hear and determine any timely objections to, requests for estimation of, or requests for reconsideration of the allowance of, Administrative Expenses or proofs of claims, including, without limitation, any objections to the classification of any Administrative Expense, Claim or Equity Interest, and to allow or disallow any Disputed Administrative Expense or Disputed Claim, in whole or in part;

(e)     To resolve disputes as to the ownership of any Administrative Expense, Claim or Equity Interest;

(f)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(g)     To issue such orders in aid of execution of this Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)     To consider any amendments to or modifications of this Plan, or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)     To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)     To hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing, or any settlement approved by the Bankruptcy Court;

(k)　　To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtor prior to the Effective Date, or request by the Reorganized Debtor after the Effective Date, for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)　　To hear any other matter not inconsistent with the Bankruptcy Code;

(m)　　To hear and determine all disputes involving the existence, scope, and nature of the discharges, releases and injunctions granted under this Plan, the Confirmation Order, or the Bankruptcy Code;

(n)　　To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any Person with the consummation or implementation of this Plan;

(o)　　To enter a final decree closing the Case; and

(p)　　To hear any claim, matter or chose in action, whether it has been commenced prior to the Effective Date, that the Debtor or Reorganized Debtor may prosecute, including any Estate Causes of Action which has not been liquidated prior to the Effective Date.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### 12.1　*Payment of Statutory Fees*.

All fees payable under section 1930, chapter 123, title 28, United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date. All such fees that arise after the Effective Date shall be paid by the Reorganized Debtor. The obligation of the Reorganized Debtor to pay quarterly fees to the Office of the United States Trustee pursuant to section 1930 of title 28 of the United States Code shall continue until such time as the Case is closed, dismissed, converted, or a final decree is entered.

### 12.2　*Modification of Plan*.

The Plan may be modified by the Debtor, in accordance with section 1127 of the Bankruptcy Code.

### 12.3　*Withdrawal of Plan.*

The Debtor reserves the right at any time prior to the entry of the Confirmation Order, to withdraw this Plan.

### 12.4    *Severability of Plan Provisions.*

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

### 12.5    *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to this Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Illinois without giving effect to the principles of conflict of laws.

### 12.6    *Compliance with Tax Requirements.*

In connection with the consummation of this Plan, any party issuing any instrument or making any distribution under this Plan,  shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under this Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under this Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### 12.7   *Computation of Time*.

In computing any period prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 12.8   *Notices.*

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered or, in the case of notice by email or ECF, when received and telephonically confirmed, addressed as follows:

> Paul M. Bauch, Esq.
> BAUCH & MICHAELS, LLC
> 53 W. Jackson Boulevard, Suite 1115
> Chicago, Illinois 60604
> Tel: (312) 588-5000
> Fax: (312) 427-5709
> pbauch@lakelaw.com

### 12.9   *Filing or Execution of Additional Documents.*

On or before the Effective Date, and without the need for any further order or authority, the Debtor or Reorganized Debtor shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtor or Reorganized Debtor as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Dated: September 9, 2019                    PON GROUP, LLC

                                           By:/s/ Paul M. Bauch, Esq.